IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CREST FOODS, INC., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-2447-D |
| | § | |
| FAT BRANDS, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiffs Crest Foods, Inc. ("Crest") and Ziad Dalal ("Dalal")

assert a federal declaratory judgment claim and various Delaware state-law claims against

defendant FAT Brands, Inc. ("FAT Brands"). FAT Brands moves to dismiss under Fed. R.

Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to

state a claim on which relief can be granted. Plaintiffs oppose the motion. For the reasons

that follow, the court grants the motion and also grants plaintiffs leave to replead.

I

This lawsuit arises out of the breach of an asset purchase agreement ("Agreement")

among Crest, Dalal, and FAT Brands.[1] Crest and FAT Brands are franchisors of retail stores

---

[1]The court recounts the background facts favorably to plaintiffs as the nonmovants.
In deciding a Rule 12 motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true,
viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches
Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area
Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)); *see
also Williams v. Certain Underwriters At Lloyd's of London*, 398 Fed. Appx. 44, 46 (5th Cir.
2010) (per curiam) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)) (applying same

that sell confections. Dalal is Crest's owner and Chief Executive Officer. From 2006 to 2023, Crest was the authorized United States franchisor for Nestlé Tollhouse cafés. FAT Brands was the franchisor for various franchises, including Great American Cookie, Marble Slab Creamery, and Pretzelmaker. In May 2022, FAT Brands agreed to purchase a collection of Crest's assets associated with its franchised Nestlé stores.

Crest, Dalal, and FAT Brands entered into the Agreement, which stated that, in exchange for the final purchase price, FAT Brands would acquire all royalties under certain of Crest's franchise agreements, the franchise agreements themselves for stores that converted into one of FAT Brands's franchises, and Crest's relationships with prospective franchisees. The final purchase price would be an aggregate amount that would be paid in an initial installment of $1.75 million when the deal closed, and subsequent installments every three months until December 31, 2023.

The parties' dispute centers on the installment payments, which were not fixed sums, but were multiples of the royalties earned by the purchased stores in the 12 months after the transaction closed. The payment structure appears to have been designed to incentivize Crest and Dalal to promptly convert the purchased stores from the Nestlé brand to one of FAT Brands's franchise brands. For example, Crest would receive five times the gross amount of royalties of purchased stores that timely converted to, or newly opened under, one of FAT Brands's franchise brands, but only one time the amount of royalties of purchased stores that

---

standard to Rule 12(b)(1) challenge).

did not convert during the 12-month period.

Then, at the conclusion of the 12-month period, on January 31, 2024, FAT Brands would account once more for what it owed and what it had paid. If the amount owed exceeded the aggregate amount paid, FAT Brands would pay Crest the unpaid portion. Conversely, if the aggregate amount paid exceeded the amount owed, Crest would remit the overage amount to FAT Brands.

On May 24, 2022 the deal closed, and FAT Brands paid Crest the initial installment of $1.75 million. For the following 12 months, Crest worked in earnest to convert the purchased stores, and FAT Brands made installment payments every three months. Then, on January 31, 2024, the parties calculated the final purchase price. FAT Brands calculated the price to be $16,973.01. After an audit, however, Crest identified discrepancies in FAT Brands's calculations with respect to at least 64 purchased stores. Crest discovered that, under FAT Brands's calculations, the final purchase price was deflated because of errors in the raw data that factored into the calculations for the installment payments owed. For example, FAT Brands erroneously listed some purchased stores as having been converted after the deadline, with the result being that Crest was credited with only one time the amount of royalties earned for those stores, as opposed to five times the amount, which was due for stores that were timely converted. On February 15, 2024 Crest demanded payment of the sum of $1,565,989.37 as the final purchase price under the Agreement. On April 3, 2024 FAT Brands maintained that it considered the final purchase price to be $16,973.01. This lawsuit followed.

On August 15, 2024 plaintiffs sued FAT Brands in Texas state court. FAT Brands removed the case to this court based on diversity jurisdiction. On November 4, 2024 FAT Brands filed a motion to dismiss that was later mooted when plaintiffs filed an amended complaint.[2] The amended complaint is the operative complaint.[3] It asserts a federal-law claim for declaratory judgment and Delaware state-law claims for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, contractual indemnification, and equitable reformation. FAT Brands now moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim on which relief can be granted. Plaintiffs oppose the motion, which the court is deciding on the briefs, without oral argument.

II

The court begins, as it must, by determining whether it has subject matter jurisdiction.

A

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998). When challenging subject matter jurisdiction under Rule 12(b)(1), a party can make a facial attack or a factual attack. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.

---

[2]In an electronic order docketed on December 16, 2024, the court denied the November 4, 2024 motion to dismiss as moot.

[3]Plaintiffs filed an amended complaint on December 2, 2024. Then, with the court's leave, plaintiffs filed a corrected amended complaint on January 2, 2025, which is the operative complaint.

-4-

1981).  If, as here, the party merely files a Rule 12(b)(1) motion, the attack is considered facial, and the court looks only at the sufficiency of the allegations in the complaint and assumes them to be true.  *Id.*  If the allegations are sufficient to allege jurisdiction, the court must deny the motion.  *Id.*  This is akin to a Rule 12(b)(6) motion in that the "pleading's allegations are presumed to be true, and '[i]f those allegations sufficiently allege a claim for recovery the complaint stands and the federal court must entertain the suit.'"  *Vinmar Overseas, Ltd. v. OceanConnect, LLC*, 2012 WL 3599486, at *4 (S.D. Tex. Aug. 20, 2012) (Rosenthal, J.) (alteration in original) (quoting *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 286 (N.D. Tex. 2012) (Boyle, J.) (Mem.)).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citation omitted).

FAT Brands bases its jurisdictional challenge on Article III constitutional standing. Article III of the United States Constitution confines the jurisdiction of a federal court to an actual "case[]" or "controvers[y]."  U.S. Const. art. III, § 2.  The standing doctrine implements this constitutional limitation by requiring that a plaintiff establish "a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citation and internal quotation marks omitted).  To establish constitutional standing, a plaintiff must demonstrate that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

B

FAT Brands contends that plaintiffs lack Article III standing because Dalal has not suffered an injury in fact, and Crest's alleged injuries are not fairly traceable to FAT Brands. FAT Brands maintains that "the Complaint fails to include any facts showing Dalal had a legally protected interest in the [Agreement], much less that he suffered an invasion of such legally protected interest." D. Br. (ECF No. 25) at 12, ¶ 14 (emphasis omitted).  FAT Brands also posits that "Plaintiffs admit that obstacles unrelated to FAT Brands' actions prevented franchisees from converting in a timely manner.  Put simply, the Complaint does not contain any facts tying FAT Brands to Dalal or Crest's alleged injuries."  *Id.* at 13, ¶ 15 (emphasis omitted).

Plaintiffs respond that they have plausibly pleaded Article III standing.  They maintain that Dalal had a legally protected interest in the Agreement, which explicitly "lists [him] as a party" and "states that [he] 'will derive substantial direct and indirect benefit from . . . [the] Agreement[.]'"  P. Resp. (ECF No. 27) at 8, ¶ 22.  Plaintiffs also contend that their injuries are directly traceable to FAT Brands's breach of the Agreement.

C

The court turns first to FAT Brands's contention that the court lacks subject matter jurisdiction because plaintiffs have not plausibly alleged that Dalal suffered an Article III injury in fact.  FAT Brands maintains that Dalal has not pleaded an injury in fact based on

-6-

its alleged breach of the Agreement because he has no right to sue under the Agreement. But Dalal's "right to relief for breach of contract" is a merits question that goes to "contractual standing," not a jurisdictional question that goes to Article III constitutional standing. *See Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) (per curiam); *see also Norris v. Causey*, 869 F.3d 360, 366 (5th Cir. 2017) (explaining that "contractual [] [] standing [] does not go to a court's subject matter jurisdiction"). The court therefore concludes that it does not lack subject matter jurisdiction over Dalal's claims on that basis.

## D

FAT Brands also contends that the court lacks subject matter jurisdiction because plaintiffs have not plausibly alleged that their injuries are fairly traceable to the challenged conduct of FAT Brands. "To show traceability, a plaintiff must allege that his injury is connected with the conduct about which he complains." *Denning v. Bond Pharm., Inc.*, 50 F.4th 445, 451 (5th Cir. 2022) (cleaned up). "Article III requires a causal connection between the plaintiff's injury and the defendant's challenged conduct[.]" *Inclusive Cmtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019). Plaintiffs' detailed allegations that they suffered monetary harm as a result of FAT Brands's breach of the Agreement plainly pleads traceability. And FAT Brands's contention that its conduct cannot have caused plaintiffs' monetary harm because plaintiffs concede that Crest's stores faced other obstacles to timely converting is unpersuasive. It is apparent from the balance of the allegations that plaintiffs do not blame those other obstacles for the diminution in the contract

price, but explicitly trace the deficit back to FAT Brands's conduct.

Accordingly, the court denies FAT Brands's motion to dismiss for lack of subject matter jurisdiction.

### III

The court considers next whether plaintiffs have stated a claim on which relief can be granted.[4]

### A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' . . . complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (internal quotation marks and alteration omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive defendants' motion, plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be

---

[4]The court will assume *arguendo* that Dalal has contractual standing because, regardless, he has failed to state a claim on which relief can be granted.

enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citation omitted).

## B

Plaintiffs assert Delaware state-law claims for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, contractual indemnification, and equitable reformation, and a federal-law claim for declaratory judgment.  FAT Brands contends that the court should dismiss these claims because they are barred by the Agreement's "exclusive remedies" provision, they are time-barred under the Agreement's "survival" provision, and they have not been plausibly pleaded.

## C

The court considers first FAT Brands's contention that the court should dismiss plaintiffs' claims because indemnification is plaintiffs' exclusive remedy under the Agreement.

### 1

Under Delaware law,[5] the goal of contract construction is "to give effect to the intent

---

[5]The parties appear to assume that Delaware law governs plaintiffs' state-law claims, likely because of the Agreement's choice-of-law clause.  This is not a foregone conclusion.

of the parties."[6]  *Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023).

> Delaware adheres to the objective theory of contracts, *i.e.* a contract's construction should be that which would be understood by an objective, reasonable third party. We will read the contract as a whole and enforce the plain meaning of clear and unambiguous language. In doing so, we endeavor to give each provision and term effect and not render any terms meaningless or illusory.
>
> Moreover, in giving sensible life to a real-world contract, courts must read the specific provisions of the contract in light of the entire contract. Where language is unambiguous, we will give effect to the plain meaning of the contract's terms and provisions. Language is ambiguous if it is susceptible to more than one reasonable interpretation. An interpretation is unreasonable if it produces an absurd result or a result that no reasonable person would have accepted when entering the contract. The parties' steadfast disagreement over interpretation will not, alone, render the contract ambiguous. The determination of ambiguity lies within the sole province of the court.

*Id.* (cleaned up). Exclusive remedy provisions that limit the contracting parties to indemnification claims are generally enforceable under Delaware law. *See Express Scripts,*

---

*See Interfirst Bank Clifton v. Fernandez*, 844 F.2d 279, 285 (5th Cir. 1988) ("A diversity court applies the choice-of-law rules of the state in which it sits."); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677-78 (Tex. 1990) (citing Restatement (Second) of Conflict of Laws ("The Restatement") § 187 (1971)) (explaining that Texas choice-of-law rules enforce contractual choice-of-law clauses with some exceptions). But because the issue is uncontested, the court will assume *arguendo* that Delaware law governs plaintiffs' state-law claims. *See Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp.*, 346 F.3d 530, 534 n.1 (5th Cir. 2003) (explaining that a court need not address choice of law issues *sua sponte*, unless they bear on the court's subject matter jurisdiction).

[6]This is especially true when the contracting parties are sophisticated. *See, e.g.*, *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 919 (Del. 2021) ("Holding sophisticated contracting parties to their agreement promotes certainty and predictability in commercial transactions.").

*Inc. v. Bracket Holdings Corp.*, 248 A.3d 824, 831 (Del. 2021); *JCM Innovation Corp. v. FL*

*Acquisition Holdings, Inc.*, 2016 WL 5793192, at *7 (Del. Super. Ct. Sept. 30, 2016).

2

The Agreement contains an "exclusive remedies" provision that limits plaintiffs'

remedy for breach to indemnification:

> Except in the event of fraud or criminal misconduct, from and after the Closing, the parties hereto acknowledge and agree that their sole and exclusive remedy with respect to any and all claims for any breach of any representation, warranty, covenant, agreement or obligation in this Agreement or the transactions contemplated hereby, shall be pursuant to the indemnification provisions set forth in this <u>Article VII</u>. In furtherance of the foregoing, each party hereby waives, to the fullest extent permitted under Law, any and all rights, claims and causes of action for any breach of any representation, warranty, covenant, agreement or obligation in this Agreement, or the transactions contemplated hereby, whether based in contract, tort, strict liability, other Laws, or otherwise, that it may have against any of the others parties hereto or their Affiliates, except pursuant to the indemnification provisions set forth in this <u>Article VII</u>. Nothing in this Agreement shall limit any Person's right to see and obtain non-monetary, injunctive relief or specific performance, or other equitable relief or remedy (including those arising from or related to fraud or criminal misconduct) to which any Person shall be entitled.

D. App. (ECF No. 26) Ex. A at 21.[7]

---

[7]The court may consider the copy of the Agreement that was attached to the motion to dismiss because it is central to plaintiffs' claims and was referenced by the operative complaint. *See Emden v. Museum of Fine Arts, Hous.*, 103 F.4th 308, 314 n.8 (5th Cir. 2024) ("Though we may not consider other materials beyond the pleadings, we may examine 'any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'").

The relevant indemnification provision states:

> Subject to the other terms and conditions of this <u>Article VII</u>, from and after the Closing, Buyer shall indemnify and defend Seller and its Affiliates (collectively, the "<u>Seller Indemnitees</u>") against, and shall hold each of them harmless from and against, and shall pay and reimburse each of them for, any and all Losses incurred or sustained by, or imposed upon, the Seller Indemnitees based upon, arising out of, with respect to, or by reason of: . . . any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Buyer pursuant to this Agreement, the other Transaction Documents or any certificate or instrument delivered by or on behalf of Buyer pursuant to this Agreement[.]

*Id.*

3

The Agreement's plain language clearly and unambiguously bars plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing. In pertinent part, plaintiffs agreed that, absent fraud or criminal conduct, their "sole and exclusive remedy" for "any and all claims for any breach of any . . . agreement or obligation in this Agreement . . . shall be pursuant to the indemnification provisions[.]" *Id.* And they otherwise "waive[d] . . . any and all rights, claims and causes of action for any breach of any . . . agreement or obligation in this Agreement[.]" *Id.* Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing are "claims for any breach of any . . . agreement or obligation[.]" *Id.*; *see 3M Co. v. Neology, Inc.*, 2019 WL 2714832, at *8 (Del. Super. Ct. June 28, 2019) (dismissing breach-of-contract claim for failure to state a claim where similar exclusive remedy provision limited plaintiff to

indemnification); *JCM Innovation Corp.*, 2016 WL 5793192, at *6 (Del. Super. Ct. Sept. 30, 2016) (same).  Accordingly, plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing are dismissed.

D

FAT Brands also contends that the court should dismiss plaintiffs' claims as time-barred.

1

> In Delaware, the default statute of limitations applicable to claims based on contract, including breach of contract, is three years.  The three-year period typically begins to run when the contract is breached, whether or not the plaintiff was aware of such breach. . . . .  Under Delaware law, however, parties to a contract are entitled to shorten the period of time in which a claim for breach may be brought, *i.e.*, the statute of limitations, so long as the agreed upon time period is a reasonable one.  Shortening statutes of limitations, as opposed to lengthening them, does not conflict with the legislatively determined limitations period and, in fact, has been seen as being harmonious with the public policy purposes served by statutes of limitations in general.

*GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2011 WL 2682898, at *6 (Del. Ch. July 11, 2011) (footnotes omitted).

2

The Agreement contains a "survival" provision that bars claims of breach that are asserted more than twelve months after the date on which the deal closed:

> Subject to the limitations and other provisions of this Agreement, the representations and warranties contained herein shall survive the Closing and shall remain in full force and effect until the date that is twelve (12) months after the Closing Date; *provided, that* the Fundamental Representations shall survive for the maximum period of time permitted by 10 Del. C. §8106(c). All covenants and agreements of the parties hereto contained in this Agreement shall survive the Closing for the period explicitly specified therein, or if no period is specified, then for twelve (12) months from and after the Closing. Any claims arising from or related to fraud or criminal misconduct shall not be barred by the expiration of the survival period of the relevant representation or warranty included herein or otherwise and shall be able to be brought at any time after the Closing. Notwithstanding the foregoing, any claims asserted in good faith with reasonable specificity (to the extent known at such time) and in writing by notice from the non-breaching party prior to the expiration date of the applicable survival period shall not thereafter be barred by the expiration of the survival period of the relevant representation or warranty and such claims shall survive until finally resolved.

D. App. (ECF No. 26) Ex. A at 20.

3

FAT Brands maintains that plaintiffs' claims should be dismissed because they are time-barred under the Agreement. Plaintiffs respond that the court should not enforce the "survival" provision because it unreasonably "calls for the limitations period to end well before full performance of the [Agreement] is fully due," P. Resp. (ECF No. 27) at 12, ¶ 36, and because it is "void against public policy," *id.* at 12, ¶ 37. In particular, plaintiffs contend that "public policy cannot uphold a contract provision that purports to strip all legal redress for material breaches and completely avoid judicial review, thus rendering the contract and its provisions illusory." *Id.* at 13, ¶ 38. Plaintiffs argue in the alternative that the limitations

-14-

period was tolled under the "discovery rule" because they could not have objected to the breach—FAT Brands's alleged failure to pay the final purchase price—until it occurred. FAT Brands replies that the court should enforce the Agreement's plain language.

4

Plaintiffs' indemnification claim is clearly time-barred under the Agreement. Under the "survival" provision, FAT Brands's agreement to pay Crest in accordance with the Agreement expired on May 24, 2023, which is 12 months after the date on which the deal closed. Yet, the earliest time at which Crest asserted its indemnification claim was on February 15, 2024, when Crest demanded a higher sum than what FAT Brands had paid. This was nine months too late.[8]

Moreover, plaintiffs' various arguments urging the court to depart from the Agreement's plain text are unpersuasive. The agreed upon limitations period is not unreasonable. The Supreme Court of Delaware has never decided whether a contractual limitations period is unreasonable if it expires before full performance of the contract is due.

---

[8] Under Delaware law, a limitations defense based on a contractual limitations period is an affirmative defense. *See LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir. 2014) ("In a diversity case, substantive state law determines what constitutes an affirmative defense."); *Woodward v. Farm Fam. Cas. Ins. Co.*, 796 A.2d 638, 640 (Del. 2002) (identifying contractual limitations defense as affirmative defense). Under federal procedure, to obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.). In other words, FAT Brands is not entitled to dismissal under Rule 12(b)(6) based on the contractual limitations period unless plaintiffs have "pleaded [themselves] out of court by admitting to all of the elements of the defense." *Id.* (alteration adopted). Here, plaintiffs have pleaded themselves out of court as to plaintiffs' indemnification claim.

*See Betty Brooks, Inc. v. Ins. Placement Facility of Del.*, 456 A.2d 1226, 1228 (Del. 1983) (explaining that "a one-year period of limitations contained within an insurance contract is reasonable"), *overruled on unrelated grounds by Woodward v. Farm Fam. Cas. Ins. Co.*, 796 A.2d 638 (Del. 2002).  The court therefore "must make an '*Erie*-guess,' i.e., a prediction of how the Supreme Court of [Delaware] would resolve the issue if presented with the same case." *Charalambopoulos v. Grammer*, 2015 WL 390664, at *5 (N.D. Tex. Jan. 29, 2015) (Fitzwater, J.) (citing *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010)). The court predicts that the instant limitations period would be enforced as reasonable.  The length of the period, 12 months, is not unreasonable.  *See, e.g.*, *Betty Brooks*,  456 A.2d at 1228.  And to the extent plaintiffs' agreement to a limitations period that expires before the final calculation of the purchase price seems unwise, Delaware law is loathe to interfere with the freedom of contract.  *See, e.g.*, *Cantor Fitzgerald, L.P. v. Ainslie*, 312 A.3d 674, 676 (Del. 2024) ("The courts of this State hold freedom of contract in high—some might say, reverential—regard."); *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 919 (Del. 2021) ("Holding sophisticated contracting parties to their agreement promotes certainty and predictability in commercial transactions."); *ChyronHego Corp. v. Wight*, 2018 WL 3642132 at *1 (Del. Ch. July 31, 2018) ("Our law supports freedom of contract, holding parties to their bargains, good and bad.").

Nor is the court persuaded that the limitations period is contrary to public policy.

> When parties have ordered their affairs voluntarily through a
> binding contract, Delaware law is strongly inclined to respect
> their agreement, and will only interfere upon a strong showing

> that dishonoring the contract is required to vindicate a public policy interest even stronger than freedom of contract. Such public policy interests are not to be lightly found, as the wealth-creating and peace-inducing effects of civil contracts are undercut if citizens cannot rely on the law to enforce their voluntary-undertaken mutual obligations.

*RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 903 (Del. 2021) (alteration omitted). Plaintiffs have not identified, and the court cannot discern, any public policy of Delaware that weighs against enforcing the plain meaning of the Agreement. To the contrary, "shortening statutes of limitations[] . . . has been seen as being harmonious with the public policy purposes served by statutes of limitations in general." *GRT, Inc.*, 2011 WL 2682898 at *6. And, more generally, "[h]olding sophisticated contracting parties to their agreement promotes certainty and predictability in commercial transactions." *Glaxo Grp. Ltd.*, 248 A.3d at 919.

Finally, plaintiffs have not persuaded the court that the limitations period is subject to equitable tolling. Again, because there is no binding decision of the Supreme Court of Delaware as to whether contractual limitations period are subject to equitable tolling, the court must make an *Erie*-guess. *Eni Holdings, LLC v. KBR Grp. Holdings, LLC*, is instructive:

> There is little Delaware case law directly addressing the availability of the discovery rule to toll a contractual limitations period; however, in *GRT*, this Court addressed in dicta whether the plaintiff in that case had sufficiently alleged tolling under the discovery rule. Having considered Delaware law's respect for parties' contractual choices, and reviewed case law from other jurisdictions addressing that question, I conclude that application of the discovery rule to toll a contractual limitations period is inappropriate, at least, as here, where the inherent unknowability of a potential claim is itself knowable or

> predictable, and thus the proper source of negotiation and resolution between the parties to the contract. In such a case, parties who contract for an abbreviated limitations period must be held to their bargain.

2013 WL 6186326, at *14 (Del. Ch. Nov. 27, 2013). The court agrees. Given Delaware's respect for freedom of contract, and considering that plaintiffs could have foreseen at the time of contracting that the balance of the provisions would bar them from suing for indemnification if FAT Brands breached the purchase price provisions, the court predicts that the Supreme Court of Delaware would not toll the Agreement's limitations period.

Accordingly, plaintiffs' indemnification claim is dismissed as time-barred.

5

Plaintiffs' claims for unjust enrichment and equitable reformation, however, are not time-barred.

> An unjust enrichment claim is a quasi-contractual claim, but it is a claim that proceeds under the theory that no contract exists. The courts developed unjust enrichment as a theory of recovery to remedy the absence of a formal contract and a plaintiff cannot recover under this theory if a contract is a measure of the plaintiff's rights. Logically, the Court cannot, at this stage in the proceedings, use a provision of the Agreement to dismiss [plaintiffs'] unjust enrichment claim that must rely on the theory there is no valid Agreement.

*JCM Innovation Corp.*, 2016 WL 5793192, at *7. And plaintiffs' reformation claim does not assert that FAT Brands breached the Agreement, which is a time-barred claim, but alleges that the payment provision, as written, did not reflect the parties' specific prior understanding. *See Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151-52 (Del.

-18-

2002) (explaining that reformation requires proof "by clear and convincing evidence that the parties came to a specific prior understanding that differed materially from the written agreement"). Thus neither claim is subject to the Agreement's limitations period for claims of breach.

E

The court turns now to FAT Brands's contention that plaintiffs have failed to plead a plausible claim for reformation.

> There are two doctrines that allow reformation. The first is the doctrine of mutual mistake. In such a case, the plaintiff must show that both parties were mistaken as to a material portion of the written agreement. The second is the doctrine of unilateral mistake. The party asserting this doctrine must show that it was mistaken and that the other party knew of the mistake but remained silent. Regardless of which doctrine is used, the plaintiff must show by clear and convincing evidence that the parties came to a specific prior understanding that differed materially from the written agreement.

*Id.*

In support of their reformation claim, plaintiffs allege the following: "The calculation of the Purchase Price . . . is the product of fraud, mutual mistake, or unilateral mistake and should be reformed." Am. Compl. (ECF No. 23) ¶ 104. "FAT Brands knew of the vagueness of the Purchase Price provisions . . . but remained silent and did not correct the mistake in order to induce Crest to execute the [Agreement] and agree to terms more favorable to FAT Brands." *Id.* ¶ 105. "In addition, Crest's and FAT Brand's intent in drafting [the provision] was that FAT Brands would pay out certain amounts . . , but the

resulting text . . . created ambiguities which FAT Brands has exploited in refusing to pay Crest the correct amounts[.]" *Id.* ¶ 106. "Crest will incur huge losses as a result of the mistakes contained in [the provision], contrary to the parties' intent. Such an interpretation would give FAT Brands an unfair advantage, and it would be inequitable and against good conscience to let the mistake stand." *Id.* ¶ 107. "In the *alternative*, Crest believed that the [transaction] would produce a much higher revenue for Crest in agreeing to [the provision]. FAT Brands knew Crest's belief was mistaken, but remained silent and did not correct the mistake." *Id.* ¶ 108 (emphasis in original).

These bare and conclusory allegations are insufficient to raise plaintiffs' right to reformation above a speculative level. *See Iqbal*, 556 U.S. at 678. For example, plaintiffs provide no details from which the court could reasonably infer that the parties came to a specific prior understanding that differed from the text of the Agreement. *See Cerberus Int'l*, 794 A.2d at 1151-52. Accordingly, plaintiffs' reformation claim is dismissed.

F

FAT Brands also contends that plaintiffs have failed to plead a plausible claim for unjust enrichment. FAT Brands maintains that plaintiffs' unjust enrichment claim should be dismissed because it is barred by the existence of an express contract between the parties. Plaintiffs respond that they can assert their unjust enrichment claim in the alternative.

Although the existence of a relevant contract between the parties precludes recovery for unjust enrichment, *see Wells Fargo Bank, N.A. v. Est. of Malkin*, 278 A.3d 53, 69 (Del. 2022), Rule 8(d)(2) would ordinarily permit plaintiffs to plead their unjust enrichment claim

in the alternative, *see Nature's Formula, Inc. v. Norstar Consumer Prods. Co.*, 2003 WL 23282765, at *3 (N.D. Tex. Sept. 10, 2003) (Fitzwater, J.) (denying motion to dismiss claim because Rule 8 permitted it to be pleaded in the alternative). Here, however, because the court has dismissed plaintiffs' contractual claims as barred by the Agreement, plaintiffs are effectively asserting their unjust enrichment claim by itself, which is impermissible given the existence of the Agreement. Accordingly, plaintiff's claim for unjust enrichment is dismissed.

## G

Finally, having dismissed plaintiffs' state-law claims, the court dismisses plaintiffs' federal declaratory judgment claim, which is based on these claims. *See Val-Com Acquisitions Tr. v. CitiMortgage, Inc.*, 421 Fed. Appx. 398, 401 (5th Cir. 2011) (per curiam) ("Once the district court had dismissed the underlying . . . claims, there were no claims for which the district court could grant declaratory relief."); *Campo v. Bank of Am., N.A.*, 2016 WL 1162199, at *6 (S.D. Tex. Mar. 24, 2016) (Rosenthal, J.) (dismissing declaratory judgment claim where it depended on claims that had been dismissed), *aff'd*, 678 Fed. Appx. 227 (5th Cir. 2017) (per curiam).

## IV

Although the court is dismissing plaintiffs' claims, it will permit them to replead. "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid

dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Some defects in plaintiffs' complaint are incurable, namely those claims that are barred by the Agreement.  There are other claims, however, that are not foreclosed by the Agreement.

\*    \*    \*

For the reasons explained, the court grants FAT Brands's January 17, 2025 motion to dismiss the amended complaint, and also grants plaintiffs leave to file a second amended complaint within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

March 28, 2025.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE